IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| DELLA LOU GRIFFIN | § | |
| VS. | § | CIVIL ACTION NO. 5:21cv53 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Della Lou Griffin, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Prior Proceedings

In 2019, pursuant to pleas of guilty entered in the 202nd District Court of Bowie County, Texas, petitioner was convicted of four counts of sexual assault of a child and one count of aggravated sexual assault of a child. Following a trial regarding punishment, a jury sentenced her to 20 years of imprisonment for each sexual assault conviction and life imprisonment for the aggravated sexual assault of a child conviction, with the sentences to run consecutively. After counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), petitioner's convictions were affirmed by the Texas Court of Appeals for the Sixth District. *Griffin v. State*, No. 06-19-00237-CR, 2020 WL 3478684 (Tex.App.-Texarkana June 19, 2020). The Texas Court of Criminal Appeals refused a petition for discretionary review. *Griffin v. State*, PDR No. PD-0605-20 (Tex. Crim. App. 2020).

Petitioner subsequently filed a state application for writ of habeas corpus. The Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing and on the court's independent review of the record. *Ex Parte Griffin*, No. WR-92,365-01 (Tex. Crim. App. 2021).

## Grounds for Review

Petitioner asserts the following grounds for review: (1) her pleas of guilty were involuntary; (2) her convictions are invalid because they were based a coerced confession and the violation of her right against self-incrimination; (3) the Double Jeopardy Clause of the Constitution was violated; (4) she received ineffective assistance of counsel because counsel: (a) improperly advised her to plead guilty and (b) failed to investigate evidence, witnesses and petitioner's mental health history.

## Factual Background

In his *Anders* brief, counsel described the factual background of this case:

> It is undisputed that the victim D.B. . . . is now an adult. She lived with her maternal aunt, Della Lou Griffin. Griffin was a prostitute and John Markus Littleton was her client. When D.B. was twelve years old, Griffin dressed D.B., gave her marihuana and alcohol and took B.D. to a motel in New Boston to have sex with Littleton. This occurred on four occasions; one time when D.B. was 12 years old. On one occasion a video recording was made of the encounter. Police located the video recording in a search of Littleton's house.

(Doc. #12-7 at 14) (citations omitted).

## Standard of Review

Title 28 U.S.C. § 2254 authorizes the District Court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reached a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court has on a materially indistinguishable set of facts. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identified the correct

governing legal principle, but unreasonably applied that principle to the facts. *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id*. at 409-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. The Supreme Court has noted that this standard is difficult to meet "because it was meant to be." *Id*.

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951.

Counsel's Affidavit

In connection with petitioner's state application for writ of habeas corpus, the court directed her attorney to file an affidavit. The affidavit provides, in part, as follows:

> . . . Griffin makes an overarching argument Counsel boycotted trial proceedings and entirely failed to subject the prosecution's case to meaningful adversarial testing. Counsel argues he did not "boycott" trial proceedings. Counsel [during the punishment trial] made an opening statement, telling the jury Counsel expected Griffin to testify on her own behalf explaining a difficult childhood and early adult years. During the State's case-in-chief, Counsel cross-examined two of the State's four witnesses. After the prosecution rested their case, Griffin took the stand . . . . Griffin spoke of a challenging upbringing, which included sexual and domestic abuse, her battles with drugs and alcohol, and her descent into the underworld of becoming a sex worker.

. . . Griffin makes a blanket statement that Counsel did not offer a defense. Counsel did not offer a defense due to the fact Defendant pled guilty to all charges and asked the jury to assess punishment. Furthermore, as part of the discovery process, Counsel and Defendant were notified of the existence of video. The video depicted Griffin acting as an amateur pornographic director, in which she video recorded her niece (the underage victim) engaging [in] sexual acts and activities with an older man. Defendant was on camera offering encouragement to the victim as well as providing tips on how to sexually please the man. Due to this video, which the District Attorney's Office planned to play at trial (and in fact, did play significant parts during the punishment phase), Counsel advised Ms. Griffin to plead guilty because in his personal opinion, based on what the video depicted, Counsel did not see any way to contest Griffin's actions recorded in the video. Counsel hoped by Griffin pleading guilty and accepting responsibility, that act would merit some consideration by the jury during their deliberations.

. . . Griffin alleges Counsel failed to inform her of the appellate process, as well as failed to inform her that any sentences would be "stacked" or run consecutively. As part of the counseling process with any client, Counsel discusses in depth the range of punishment a defendant could face, and especially if there are multiple charges, whether the sentences can be "stacked." Counsel specifically remembers discussing this possibility with Griffin during the pre-trial process while at the Bowie County Jail. Regardless, the State never extended a plea offer to Griffin and exercised their judicial right to a trial.

. . . Ms. Griffin complains her plea was not voluntary. With every criminal defendant in the 202nd District Court, Judge Tidwell goes over the plea admonishment with the defendant. As part of the admonishments, Judge Tidwell always asks the defendant "Are you pleading freely and voluntarily?" When the trial judge asked Griffin this question, she answered in the affirmative.

. . . Griffin complains that Counsel was not familiar with Griffin's mental history, her low IQ and her illiteracy. Griffin testified under direct examination to these facts. However, under cross-examination Griffin admitted she was able to hold a steady job at a pizza buffet for a number of years, undermining her claim of mental deficiency or defect. Nothing prevented the jury from considering the mitigating evidence presented on Griffin's behalf during their deliberations.

. . . Griffin alleges Counsel did not research or investigate her case and Counsel should have moved to suppress statements made by Griffin. Griffin and Counsel did visit the District Attorney's office to view the video provided by the State. During the playing of the video, Griffin became very emotional during the first few minutes of a two-hour video. Counsel asked Griffin if she wished to continue viewing the entire video. Griffin answered in the negative. As to Griffin's arguments that Counsel should have moved to suppress statements, Griffin did not make any statements to law enforcement, therefore no statements could be suppressed.

. . . Griffin makes a Double Jeopardy claim. Once again, Griffin should have advanced this argument on appeal. Nowhere in this ground does Griffin make arguments Counsel's performance was ineffective in any way. She was tried on four separate instances of Sexual Assault of a Child and one instance of Aggravated Sexual Assault of a Child. The video depicted multiple instances of sexual abuse perpetrated by Mr. Littleton on the underage victim, with Griffin present or

> participating in all instances. Furthermore, the victim testified at trial Griffin repeatedly "pimped" her out to Mr. Littleton's hotel room for sexual performances in exchange for money, and it was not a one-time incident. Griffin was not tried on five counts for a single criminal episode, but multiple criminal episodes contained in a single indictment.

(Doc. #12-12 at 114-18).

<u>Analysis</u>

***Involuntary Guilty Pleas***

Petitioner states her pleas of guilty were not made voluntarily. She also asserts her pleas were made without a true understanding of the charges against her and the consequences of her pleas. Petitioner states she could not read the paperwork she signed. She contends her pleas were the product of fear and ignorance.

A federal court will uphold a guilty plea in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). For a plea to be intelligently and knowingly entered, the defendant must understand both the true nature of the charge against her and the consequences of the plea. *United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991).

The critical issue in determining whether a plea was voluntary and intelligent is "whether the defendant understood the nature and the substance of the charges against hm and not necessarily whether he understood their technical legal effect." *James*, 56 F.3d at 666. "As long as the defendant understood the length of the punishment he might possibly receive, he is fully aware of the consequences of his plea." *Spinelli v, Collins*, 992 F.2d 559, 561 (5th Cir. 1993). When "a defendant understands the nature of the charges against him and the consequences of his plea, yet voluntarily chooses to plead guilty, that plea should be upheld on federal review." *Diaz v. Martin*, 718 F.2d 1372, 1376-77 (5th Cir. 1983).

Prior to entering her guilty pleas, petitioner signed a document entitled Written Plea Admonishments. The document informed petitioner she had been charged with four counts of sexual assault of a child, a second degree felony, and one count of aggravated sexual assault of a child, a first degree felony. The document also informed her she could be sentenced to a term of

imprisonment ranging from 2-20 years of imprisonment if convicted of sexual assault of a child, and to a term of imprisonment of from 5-99 years of imprisonment if convicted of aggravated sexual assault of a child. Petitioner acknowledged she understood what she was charged with and was aware of the consequences of her pleas. She also acknowledged she was waiving certain rights and that she was mentally competent. She stated her pleas were being entered freely and voluntarily. Finally, petitioner acknowledged she had read the indictment returned against her, had committed the offenses set forth in the indictment and that she was totally satisfied with counsel's performance. (Doc. #12-1 at 55-57).

In addition, a hearing was held concerning the entry of petitioner's guilty pleas. During the hearing, petitioner stated she understood the charges against her and the punishment that could be imposed. Petitioner acknowledged that by pleading guilty she was waiving certain rights and agreed that she was pleading guilty because she was guilty. In addition, the court found she was competent to enter her pleas. (Doc. #14-7 at 5-7).

The Plea Admonishments form signed by petitioner constitutes an official document that is entitled to a presumption of regularity. *Carter v. Collins*, 918 F.2d 1198, 1202 n.4 (5th Cir. 1990); *Hobbs*, 752 F.2d at 1081. In addition, formal declarations in open court carry a strong presumption of truth. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The document signed by petitioner and her statements during the plea hearing demonstrate petitioner was aware of the charge against her, the punishment she could receive and that her guilty pleas were voluntary.

The record reflects that petitioner's guilty pleas were voluntary. The rejection by the state courts of this ground for review was therefore not contrary to, and did not involve an unreasonable application of, clearly established federal law. Nor did it result in a decision that was based on an unreasonable determination of the facts before the state courts.

*Coerced Confession and Incriminating Statement*

With respect to this ground for review, petitioner only asserts that her convictions were obtained by the use of a forced confession and that her convictions violated her right against self-incrimination.

Counsel states in his affidavit that petitioner made no statements to the police. The record contains no such statement. Nor is there any reference in the record to a confession by petitioner to the police. As there is no indication petitioner made either an incriminating statement or a confession, the rejection of this ground for review by the state courts was not contrary to, or an unreasonable application of, clearly established federal law.

*Double Jeopardy*

Petitioner states her convictions violated the Double Jeopardy Clause, but makes no attempt to explain how the convictions violated that Clause.

A five count indictment was returned against petitioner. Four counts charged her with sexual assault of a child on three different dates. The first two counts involved incidents which occurred on the same day but alleged two different ways in which the offense was committed. The third and fourth counts involved incidents on different dates. The fifth count charged petitioner with aggravated sexual assault on a child based on events which occurred on a different date than the dates set forth in the first four counts. (Doc. #12-1 at 16-17).

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This Clause, applicable to the states through the Fourteenth Amendment, prevents: (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for an offense after a conviction; and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

Petitioner was not subjected to a second prosecution after an acquittal or a conviction. Further, petitioner's convictions based on counts 3, 4 and 5 of the indictment clearly do not

constitute multiple punishments for the same offense. The convictions based on counts 1 and 2 of the indictment requires further analysis.

The first two counts of the indictment allege violations of two different subsections of the same statute on the same date against the same victim. Count 1 alleges the penetration of the victim's sexual organ, while count 2 alleges the penetration of the victim's mouth by an actor's sexual organ.

In *Blockburger v. United States*, 284 U.S. 299, the Supreme Court stated the test to determine whether multiple punishments have been imposed for the same offense. "If each different statutory offense requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap on the proof offered to establish a crime." *United States v. Marden*, 872 F.2d 123, 125 (5th Cir. 1989).

Count 1 of the indictment alleged a violation of Section 22.011(a)(2)(A) of the Texas Penal Code, which provides that a person commits an offense if the sexual organ of a child is penetrated by any means. Count 2 of the indictment alleged a violation of Section 22.011(a)(2)(B) of the Texas Penal Code, which provides that a person commits an offense if the mouth of a child is penetrated by a sexual organ. As a result, the offense charged in count 1 of the indictment required proof of a fact--penetration of the victim's sexual organ--that the offense charged in count 2 of the indictment did not. Accordingly, petitioner's convictions based on counts 1 and 2 of the indictment did not violate the *Blockburger* test. *Cornet v. Stephens*, No. EP-15-cv-252-DB, 2018 WL 4183226 at *9-10 (W.D. Tex. Aug. 30, 2018).

Petitioner was not subjected to a second prosecution after an acquittal or conviction. Nor was he punished twice for the same offense. As a result, the record does not demonstrate the Double Jeopardy Clause was violated. The rejection by the state courts of this ground for review was therefore not contrary to, or an unreasonable application of, clearly established federal law.

*Ineffective Assistance of Counsel*

    A. <u>Legal Standard</u>

In addressing the issue of what a petitioner must prove to demonstrate an ineffective assistance of counsel claim, courts look to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004). In order to show that counsel was ineffective a petitioner must demonstrate:

> First . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings it cannot be said that the conviction . . . resulted in a breakdown of the adversarial process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. In order to prove the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009). "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 562 U.S. at 111.

A habeas petitioner must "affirmatively prove," not just allege, prejudice. *Day*, 556 F.3d at 536. If a petitioner fails to prove the prejudice part of the test, the court need not address the question of counsel's performance. *Id*. A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). In determining the merits of an alleged Sixth Amendment violation, a court "must be highly deferential" to counsel's conduct. *Strickland*, 466 U.S. at 687.

Whether the representation was deficient is determined as measured against an objective standard of reasonableness. *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious

9

unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 119, 2006 (5th Cir. 1983)). "There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Woodward v. Epps*, 580 F.3d 318, 329 (5th Cir. 2009) (quoting *Romero v. Lynaugh*, 884 F.3d 871, 876 (5th Cir. 1989)).

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as adjudicating a similar claim on direct appeal of a federal conviction. *Harrington*, 562 U.S. at 101. The key question on federal habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. The deferential standard applicable to federal habeas review requires federal courts to apply a "doubly deferential" standard of reviews to claims of ineffective assistance, under which both the conclusions of the state court and strategic decisions of defense counsel are given the benefit of the doubt. *Burt v. Titlow*, 571 U.S. 10, 15 (2013).

B. <u>Application</u>

1. <u>Advice Regarding Guilty Plea</u>

Petitioner states counsel failed to properly advise her regarding her guilty pleas. She states counsel promised her that if she pled guilty, the court would go easy on her at sentencing. Instead, she received a harsh sentence.

A petitioner may seek relief based on unfulfilled promises by their attorney. In order to be entitled to relief, a petitioner must: (1) provide the exact terms of the alleged promise; (2) state exactly when and where the promise by made; and (3) state the identify of an eyewitness to the promise. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

Petitioner fails to satisfy this standard. She does not state when counsel promised her a lenient sentence. Nor has she identified any person who witnessed such a promise. This ground for review is therefore without merit.

2. <u>Failure to Investigate</u>

Petitioner also complains that counsel failed to conduct a proper investigation regarding the evidence against her. Specifically, she states counsel failed to investigate statements by the victim that she and petitioner lived together and failed to investigate whether the victim was legally married at the age of 15. Petitioner states that as a result of counsel's failure to investigate the victim, he was not prepared to impeach her testimony. She further asserts counsel did not attempt to gather exculpatory evidence or witnesses.

"Counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [proceeding]. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Petitioner asserts a proper investigation might have revealed the victim was married when she was 15 years old and that she lied about whether she and petitioner lived together. However, it is not clear how this information would have assisted her defense. She also asserts an investigation might have led to exculpatory evidence, but fails to describe the evidence that might have been found. As petitioner has failed to show that additional investigation would have altered the outcome of the proceeding, she has failed to demonstrate counsel's alleged failure to investigate constituted ineffective assistance of counsel.

With respect to petitioner's contention that counsel failed to locate exculpatory witnesses, complaints of uncalled witnesses are not favored in federal habeas review because the presentation of witnesses is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance of counsel claim based on counsel's failure to call a witness to testify, a petitioner must identify the witness, demonstrate that the witness was available to testify and would have done so, set forth the contents of the witness's proposed testimony and show the testimony

would have been favorable to a particular defense. *Id*. The requirements of showing a witness was available and willing "[are] not a matter of formalism." *Woodcox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

Petitioner asserts counsel failed to locate witnesses who could have provided exculpatory testimony. However, petitioner has not provided the names of any such witnesses, shown they were available to testify at trial or described the testimony they would have offered. As a result, petitioner has failed to demonstrate she suffered prejudice as a result of counsel's alleged failure to locate witnesses.

In addition, petitioner states she is bi-polar and was suffering from depression when she entered her guilty pleas. She states her attorney failed to investigate her mental health history or seek a competency hearing.

The record reflects petitioner signed a Plea Admonishments form acknowledging she was sane and mentally competent and that she understood the nature of the charges against her. (Doc. #12-1 at 55-57). At the guilty plea hearing, petitioner stated she was suffering from depression. The court then found she was competent to enter her guilty pleas. (Doc. #14-7 at 5-7).

There is nothing in the record which contradicts the trial court's finding. Nor has petitioner offered any support for her assertion that she is bi-polar or any evidence demonstrating that any mental illness made her incompetent to enter her pleas of guilty. As a result, she has failed to show counsel's failure to investigate her mental health history or seek a competency hearing fell below an objective standard of reasonableness or resulted in prejudice.

Recommendation

This petition for writ of habeas corpus should be denied.

Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1).

Failure to file objections bars a party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

SIGNED this the 20th day of August, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE